IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Lisa Lynette Johnson, ) | |
| ) | Civil Action No. 6:14-2026-MGL-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

   This case is before the court for a report and recommendation pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.), concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).

   The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)) to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

   The plaintiff filed an application for disability insurance benefits ("DIB") on May 3, 2011, alleging that she became unable to work on September 15, 2010. The application was denied initially and on reconsideration by the Social Security Administration. On January 3, 2012, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff appeared on October 5, 2012, considered the case *de novo* and, on November 30, 2012, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied the plaintiff's request for review on March 22, 2014. The plaintiff then filed this action for judicial review.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> (2) The claimant has not engaged in substantial gainful activity since September 15, 2010, the alleged onset date (20 C.F.R § 404.1571 *et seq*).
>
> (3) The claimant had the following severe combination of impairments: degenerative disc disease and obesity (20 C.F.R. § 404.1520(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).
>
> (5) After careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity to perform the full range of sedentary work[1] as defined in 20 C.F.R. § 404.1567(a).
>
> (6) The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).
>
> (7) The claimant was born on August 15, 1966, and was 44 years old, which is defined as a younger individual age 45-49,[2] on the alleged disability onset date (20 C.F.R. § 404.1563).
>
> (8) The claimant has a limited education and is able to communicate in English (20 C.F.R. §§ 404.1564).

---

[1] Sedentary work involves lifting/carrying light items; and occasionally lifting/carrying up to ten pounds, as well as standing or walking for two hours in an eight-hour workday, and sitting for six hours each in an eight-hour workday.

[2] The plaintiff was actually a "younger individual age 18-44" on her alleged disability onset date and changed age categories to a "younger individual age 45-49" by the time of the ALJ's decision. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, rule 201.19. *See also id.* § 404.1563 ("If you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work. However, in some circumstances, we consider that persons age 45–49 are more limited in their ability to adjust to other work than persons who have not attained age 45.") (citation omitted). This inaccuracy does not appear to have had any effect on the ALJ's decision.

2

>   (9) Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).
>
>   (10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a)).
>
>   (11) The claimant has not been under a disability, as defined in the Social Security Act, from September 15, 2010, through the date of this decision (20 C.F.R. §§ 404.1520(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

>   the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that

prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* § 404.1520(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments that prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct

>   a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that the conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

The plaintiff was 44 years old on her alleged onset date of disability and was 46 years old at the time of the ALJ's decision. She has an eleventh grade education and past relevant work as a parking lot attendant and cashier manager.

The plaintiff received treatment at Franklin C. Fetter Family Center ("Fetter") prior to and throughout the relevant period for degenerative disc disease ("DDD"), sciatica, and a variety of routine medical issues, including maintenance of cholesterol and diabetes (Tr. 208-25). On October 13, 2010, her examination revealed muscle spasm in her lower back (Tr. 214-15). A lumbar spine x-ray taken on October 25, 2010, was normal except for borderline disc space narrowing at the L4-L5 level (Tr. 201).

In November 2010, a Fetter provider recommended that the plaintiff consult an orthopedist and instructed the plaintiff to take off her high-heeled shoes and wear flat shoes (Tr. 210).

On January 11, 2011, a provider completed a South Carolina Employment Security Commission primary care provider's form in connection with the plaintiff's application for unemployment insurance benefits. The form listed the plaintiff's last occupation as parking lot attendant. The provider checked a box opining that the plaintiff had not been able to work full-time as a parking lot attendant since October 7, 2010 (Tr.

241).  The provider further indicated that the plaintiff had been under his care since that same date (Tr. 241).  Two weeks later the South Carolina Department of Employment and Workforce ("SCDEW") denied plaintiff's claim for unemployment insurance benefits based on the following ground, "An individual must be able to work in order to be eligible to receive unemployment insurance benefits.  Due to a health condition, you are unable to work and are determined ineligible . . . " (Tr. 242).

On January 19, 2011, the plaintiff returned to Fetter and reported intense lower back pain.  The provider noted that the plaintiff  "still has not kept ortho app[ointment]t" (Tr. 208).

Barry Weissglass, M.D., performed a consultative examination of the plaintiff on July 21, 2011, for complaints of back pain.  Dr. Weissglass reported that the plaintiff complained of lower back pain that radiated into the bottom of her right foot and that while she had experienced these problems for several years, they had worsened over time.  The plaintiff reported that her pain worsened with bending, lifting, twisting, and prolonged walking or standing and improved upon lying down.  The plaintiff also reported that Lortab helped her pain.  The plaintiff said she could not afford the recommended orthopedic consultation.  She reported needing help with household tasks and grocery shopping (Tr. 227).  The plaintiff reported that she could not perform any lifting, and she used a cane (Tr. 228).  Dr. Weissglass's examination revealed that the plaintiff had normal range of motion "when limitations due to back pain are excluded"; a slightly antalgic gait requiring significant assistance; used a cane in her right hand; required significant assistance of two people to get on and off the exam table; needed some help to move from lying to a sitting position; could not perform tandem, heel, or toe walking; pain on seated leg extension and down the right leg with seated leg extension at 50% range of motion; no back spasm and mild tenderness; and normal cervical spine motion (Tr. 228-29).

Dr. Weissglass assessed the plaintiff with nonspecific low back pain with associated radicular right leg pain. He stated that she should avoid activities involving repetitive use of her back muscles, holding her back steady in one position for long periods, or requiring her back to remain in an awkward posture repetitively or for any length of time; should avoid bending, lifting, twisting, and prolonged standing, sitting, and driving. He also stated that the plaintiff should alternate positions frequently (Tr. 229).

On August 3, 2011, Tom Brown, M.D., a state agency medical consultant, reviewed the plaintiff's file and opined that she could perform light exertional work with some postural limitations due to her low back pain and needed to avoid concentrated exposure to hazards like working at heights due to her occasional use of narcotics (Tr. 61-69). Dr. Brown opined that the plaintiff could perform her past relevant work as a parking lot attendant as generally performed in the national economy and, thus, was not disabled under the Act (Tr. 68-69).

On November 4, 2011, Cleve Hutson, M.D., another state agency medical consultant, reviewed the plaintiff's file and concurred that she was not disabled and could perform her past relevant work as a parking lot attendant. Dr. Hutson noted that the plaintiff had not received any treatment since January 2011 (Tr. 72-81).

In June 2012, after an x-ray detected a lesion on her cervical and upper thoracic vertebrae, the plaintiff was referred for an MRI. The MRI showed prominent hemopoietic marrow pattern suggesting marrow conversion and degenerative changes including some disc protrusions and bulges. The plaintiff had ligamentum flavum thickening and contact of the posterior aspect of the cervical cord at C2-C3, along with bilateral disc protrusions and small associated extruded component at the C3-C4 level with moderate canal stenosis and possible contact of the ventral nerve rootlets at both lateral recesses. The MRI further revealed moderate to severe central stenosis at C3-C4 with possible contact of the exiting left nerve roots, as well as mild to moderate central stenosis at C4-C5,

moderate central stenosis at C5-C6, and central to paracentral right shallow protrusion at C6-7 with possible contact of the right ventral nerve rootlet (Tr. 237-38).

On October 18, 2012 ,Sharon Bullard, FNP, of Fetter, completed a questionnaire in response to a request from the plaintiff's attorney, (Tr. 243-44). Nurse Bullard checked the "Yes" box indicating that due to the plaintiff's neck, back, and leg pain and the symptoms caused by her insulin dependent diabetes, the plaintiff would need to rest and/or take breaks on an unpredictable and unscheduled basis in order to complete an eight-hour workday. Nurse Bullard indicated that she could not determine how often the plaintiff would be absent or unable to complete a full workday if she attempted to work. Nurse Bullard checked another "Yes" box to indicate that the plaintiff's functional limitations as described were reasonably consistent with the objective medical findings from her MRIs, other diagnostic tests, and clinical examinations (Tr. 244).

## *Hearing Testimony*

The plaintiff testified that she began to experience problems with her back around 2000 and that it progressed to the point that it affected her legs and made it difficult for her to walk (Tr. 43). She testified that she applied for unemployment benefits when she stopped working, but that her claim was declined because it was determined that she was unable to work (Tr. 44). The plaintiff indicated that she had recently undergone an MRI of her cervical spine, which found that she had bulging discs in her neck and that she was currently experiencing constant stiffness in her neck and numbness on her left side and left arm (Tr.45-48). She indicated that she experiences excruciating pain in her lower back that goes down her right side all the way to her foot, with a burning and tingling feeling into her foot (Tr. 49). She testified that she has lost all feeling in her right leg on occasion, which caused the leg to give out (Tr. 49-51). She also indicated that she experiences burning in her feet due to neuropathy from her diabetes and that her diabetes also causes extreme fatigue (Tr. 51-52).

The plaintiff testified that she stopped working due to lower back and right leg pain (Tr. 49). She also testified that she experienced constant tingling and stiffness in her neck and some left arm numbness and tingling (Tr. 45-48). The plaintiff testified that her sole treatment for her leg, neck, and back pain was medication and that she did not visit an orthopedist as recommended because she did not have health insurance (Tr. 56), although she did have an evaluation with a neurosurgeon (Tr. 56-57).

The plaintiff further testified that she performed household chores and shopped for groceries, but had to take breaks or needed assistance from her children (Tr. 52, 55). She stated that her leg gives out after she walks two blocks due to weakness and that she also cannot sit for very long as a result of her lower back pain. She indicated that she could sit in one position for about 15 minutes and that, while it helped when she moved around, she also needs to elevate her right leg or lie down in order to get comfortable (Tr. 52-53). She testified that she could lift a gallon of milk, but that at times she has problems gripping things with her left hand (Tr. 53). She also indicated that it was very difficult for her to bend, stoop, or squat and that it was hard for her to pick something up if she dropped it (Tr. 53).

The plaintiff testified that she has been prescribed Flexeril and Tramadol for pain, but that Flexeril made her drowsy (Tr. 54). She also indicated that she has experienced difficulties with concentration and focus due to the side effects of her medication (Tr. 54). As to her daily activities, plaintiff testified that she usually wakes up around 9:00 a.m. and that although she tries to tidy up around her house, she is only able to do a little bit of housework at a time (Tr.55). She further indicated that she spends most of the day reclining and that she no longer drives due to the numbness she experiences in her right leg (Tr. 55-56).

## **ANALYSIS**

The plaintiff argues that the ALJ erred (1) in the assessment of her residual functional capacity ("RFC"); (2) by failing to give proper weight to the opinion of Dr. Weissglass; (3) by failing to properly evaluate her credibility; and (4) by failing to explain the consideration given to the SCDEW's determination that she was unable to work (pl. br. at 1).

### *Residual Functional Capacity and Examining Physician Opinion*

The plaintiff first argues that the ALJ's RFC finding is not supported by substantial evidence and that the ALJ failed to give proper weight to Dr. Weissglass' opinion (pl. brief at 8-13). As these two issues are interrelated, they will be considered together. Social Security Ruling ("SSR") 96-8p states that "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *1. Moreover, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.*

The regulations require that all medical opinions in a case be considered, 20 C.F.R. § 404.1527(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-exclusive list: (1) the examining relationship; (2) the length of the treatment relationship and the frequency of the examinations; (3) the nature and extent of the treatment relationship; (4) the evidence with which the physician supports his opinion; (5) the consistency of the opinion; and (6) whether the physician is a specialist in the area in which he is rendering an opinion. *Id.* § 404.1527(c)(1)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, statements that a patient is "disabled" or "unable to work" or similar assertions are not medical opinions.

These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The plaintiff specifically argues that the ALJ's evaluation of Dr. Weissglass' opinion was flawed and that the RFC finding conflicts with Dr. Weissglass' opinion that the plaintiff should avoid bending, lifting, twisting, and prolonged standing, and sitting and needed to alternate positions frequently (pl. brief at 8-13; pl. reply at 1-3; *see* Tr. 227-29). As noted by the plaintiff, Dr. Weisglass was the only examining physician to provide a medical source opinion regarding her functional limitations. The ALJ found that the opinion was entitled to only limited weight, stating as follows:

> Limited weight is accorded to Dr. Weissglass' opinion as his assessment was based on a one time examination and he had limited objective medical evidence of record to review. Notably, the limitations in his examination appear largely based upon the claimant's subjective complaints (Exhibit 8F).

(Tr. 29).

While the ALJ found that Dr. Weissglass' opinion was entitled to only limited weight due to the limited amount of objective evidence he had available for review, Dr. Weissglass did indicate in his report that the plaintiff's straight leg testing was positive on the right and that "[h]er plain x-rays do indicate a problem at the L4 to 5 area" (Tr. 229). The Commissioner contends that the ALJ's assessment of the plaintiff's RFC, as well as his findings regarding Dr. Weissglass' opinion, are supported by the "sparse and unremarkable" objective medical evidence of record (def. brief at 11). However, as noted by the plaintiff, the Commissioner does not appear to consider the results of her cervical spine MRI in June 2012, which showed moderate to severe central stenosis at C3-C4 with possible contact of the exiting left nerve roots, moderate central stenosis at C5-C6, and central to paracentral right shallow protrusion at C6-C7 with possible contact of the right ventral nerve (*see* Tr. 236-37).

Furthermore, the ALJ found that the plaintiff has the RFC for the full range of sedentary work, but he did not cite any medical opinion from either a treating or examining

11

physician to support his conclusion that the plaintiff was capable of meeting the physical demands for the full range of sedentary work (*see* Tr. 27-30).  Social Security Ruling ("SSR") 96-9p provides that the full range of sedentary work requires that an individual be capable of lifting up to ten pounds at a time and sitting for six hours of an eight-hour workday. 1996 WL 374185, at *3.  This ruling further provides that the need to alternate sitting and standing results in an erosion of the occupational base for the full range of unskilled sedentary work. *Id.* at *7.  As set forth above, Dr. Weissglass opined that the plaintiff should avoid lifting and prolonged sitting and would need to alternate positions frequently (Tr. 229).  Accordingly, the ALJ should provide a specific explanation as to why Dr. Weissglass' opinion as to these limitations was not adopted, as required by SSR 96-8p. 1996 WL 374184, at *1 *("*The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").  The undersigned finds that the ALJ's two sentence explanation for rejecting Dr. Weisglass' opinion is insufficient.

The ALJ also stated that his RFC finding was supported by the fact that the plaintiff "has not undergone any type of treatment for her back pain, other than prescription medications" (Tr. 30), and, in assessing her credibility, the ALJ noted that the plaintiff "did not follow up with her orthopedic appointment" (Tr. 28).  In a June 2011 Report of Contact, the plaintiff stated that she had been referred to an orthopedic physician but could not afford the initial cost of $200 (Tr. 176), and she testified at the hearing that she was unable to see the orthopedic physician due to the cost (no insurance or Medicaid) (Tr. 56-57).  The Fourth Circuit has found that a "claimant may not be penalized for failing to seek treatment she cannot afford; '[i]t flies in the face of the patent purpose of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.'" *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (quoting *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984)).  As a result, an ALJ should not discount a claimant's subjective complaints on the basis of her failure to seek recommended medical treatment when she has asserted—and the record does not contradict—that she could not

afford such treatment. *Id. See also* SSR 96–7p, 1996 WL 374186, at *7 ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . ."). Accordingly, upon remand, the ALJ should consider the plaintiff's financial situation and its impact on her ability to seek medical treatment in evaluating her credibility and in assessing her RFC. *See Dozier v. Colvin*, C.A. No. 1:14-cv-29-DCN, 2015 WL 4726949, at *4 (D.S.C. Aug. 10, 2015) (remanding case due to ALJ's improper penalization of the claimant for her failure to seek treatment and instructing ALJ to make factual findings regarding the claimant's financial situation and its impact on her ability to seek medical treatment).

Based upon the foregoing, the undersigned recommends that this case be remanded for further consideration of Dr. Weissglass' opinion and the plaintiff's reasons for not following up with the orthopedic specialist. Accordingly, the plaintiff's remaining allegations of error will not be addressed. *See Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir.2003) (remanding on other grounds and declining to address claimant's additional arguments). However, upon remand, the Commissioner should take these into consideration, specifically that the ALJ failed to properly consider her activities of daily living in evaluating her credibility, and failed to properly explain the consideration given to the SCDEW's decision regarding her claim for unemployment benefits (pl. brief at 13-18; pl. reply at 3-6).

**CONCLUSION AND RECOMMENDATION**

Now, therefore, based on the foregoing, this court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further consideration as discussed above.

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

September 8, 2015
Greenville, South Carolina